## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Bankruptcy Case No. 18-41286 (MER) |
| Millerbernd Systems, Inc., | Chapter 11 |
| Debtor. | |

## THE UNSECURED CREDITORS' COMMITTEE'S
## CHAPTER 11 PLAN OF LIQUIDATION

Dated: July 1, 2019

Respectfully submitted,

**THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF MILLERBERND SYSTEMS, INC.**

By: */e/ Jeffrey D. Klobucar*
Jeffrey D. Klobucar (#0389368)
Patrick D. Newman (#395864)
**BASSFORD REMELE, P.A.**
100 South Fifth Street, Suite 1500
Minneapolis, MN 55402
jklobucar@bassford.com
pnewman@bassford.com
Telephone: (612) 333-3000
Facsimile: (612) 333-8829

and

Matthew E. McClintock, Esq. (*pro hac vice*)
Brian J. Jackiw (*pro hac vice*)
Amrit S. Kapai, Esq. (*pro hac vice*)
**GOLDSTEIN & MCCLINTOCK LLLP**
208 South LaSalle, Suite 1750
Chicago, Illinois 60604
mattm@goldmcclaw.com
brianj@goldmcclaw.com
amritk@goldmcclaw.com

Telephone:  312-337-7700
Facsimile:   312-277-2305

***Counsel for the Official
Committee of Unsecured Creditors***

# TABLE OF CONTENTS

Article I. Definitions, Rules of Interpretation, Computation of Time and Governing Law ...........2
    A.    Rules of Interpretation, Computation of Time and Governing Law ...................... 2
    B.    Defined Terms ................................................................................................... 2
Article II. Administrative Claims; Priority Tax Claims ...........................................................9
    A.    Administrative Claims .................................................................................... 9
    B.    Priority Tax Claims .......................................................................................... 10
Article III. Classification and Treatment of Classified Claims and Equity Interests ....................10
    A.    Summary ........................................................................................................ 10
    B.    Treatment of Claims and Equity Interests ......................................................... 11
        1.    Class 1:  Priority Claims – §507(a)(4) ...................................... 11
        2.    Class 2:  Secured Claim of SBT .................................... 11
        3.    Class 3: Secured Claim of TCF .................................. 11
        4.    Class 4: Secured Claim of Bluco .............................. 12
        5.    Class 5: Secured Claim of Wells Fargo ..................... 12
        6.    Class 6:  Other Secured Claims ............................... 12
        7.    Class 7: General Unsecured Claims .......................... 13
        8.    Class 8:  Insider Unsecured Claims .......................... 13
        9.    Class 9: Equity Interests .......................................... 13
Article IV. Voting:  Treatment of Disputed Claims ................................................................13
    A.    Objections to Claims; Prosecution of Disputed Claims ..................................... 13
    B.    Estimation of Claims ....................................................................................... 14
    C.    Payments and Distributions on Disputed Claims .............................................. 14
    D.    Enforcement of Bar Date Order ....................................................................... 14
Article V. Distributions ...................................................................................................15
    A.    Timing and Effective Date of Distributions ...................................................... 15
    B.    Method of Distributions to Holders of Claims .................................................. 15
    C.    Delivery of Distributions ................................................................................. 15
    D.    Tax Identification Numbers and OFAC Certifications ...................................... 15
    E.    Undeliverable Distributions ............................................................................. 15
        2.    Failure to Claim Undeliverable Distributions ............................. 16
    F.    Withholding and Reporting Requirements ........................................................ 16
    G.    Time Bar to Cash Payments ............................................................................. 16
    H.    Interest ........................................................................................................... 17
    I.    Fractional Dollars; De Minimis Distributions ................................................... 17
    J.    Set-Offs ......................................................................................................... 17
    K.    Settlement of Claims and Controversies ........................................................... 17
Article VI. Implementation of the Plan ...............................................................................18
    A.    Creditor Trust ................................................................................................. 18
    B.    Vesting of Assets ............................................................................................ 18
    C.    Dissolution of Debtor ...................................................................................... 18

D.      Oversight Committee ................................................................................... 19

E.      Corporate Action.......................................................................................... 19

F.      Effective Date Transactions ......................................................................... 20

G.      Preservation of Rights .................................................................................. 20

H.      Cancellation of Notes, Instruments, and Debentures................................... 21

I.      Insurance Preservation ................................................................................. 21

Article VII. Executory Contracts and Unexpired Leases........................................................21

A.      Presumed Rejection ...................................................................................... 21

B.      Rejection Damages Claims ........................................................................... 21

Article VIII. Conditions Precedent to Confirmation and the Effective Date..............................22

A.      Acceptance or Rejection of the Plan ............................................................ 22

        1.      Acceptance by Impaired Classes ...................................................... 22

        2.      Elimination of Classes ..................................................................... 22

        3.      Nonconsensual Confirmation............................................................ 22

B.      Conditions Precedent to Confirmation Date of the Plan............................... 22

C.      Conditions Precedent to the Effective Date of the Plan................................ 23

D.      The Confirmation Order ............................................................................... 23

Article IX. Effect of Plan Confirmation ..................................................................................23

A.      Discharge of Claims...................................................................................... 23
        The Debtor will not receive a discharge under the Plan in accordance with section
        1141 of the Bankruptcy Code. ...................................................................... 23

B.      Termination of Subordination Rights and Settlement of Related Claims............ 23

C.      Injunction ..................................................................................................... 24

D.      Terms of Existing Injunctions or Stays......................................................... 25

E.      Exculpation .................................................................................................. 25

F.      Releases........................................................................................................ 25
        1.      **Releases by the Debtor**.................................................................. 25
        2.      **Releases by Holders of Claims and Interests**............................... 26
        3.      **Release of Liens** .......................................................................... 26

Article X. Miscellaneous .........................................................................................................26

A.      Payment of Statutory Fees ........................................................................... 26

B.      Section 1146 Exemption ............................................................................... 26

C.      Business Day................................................................................................. 27

D.      Dissolution of Committee ............................................................................. 27

E.      Severability .................................................................................................. 27

F.      Conflicts ....................................................................................................... 27

G.      Further Assurances ....................................................................................... 27

H.      Notices .......................................................................................................... 27

I.      Filing of Additional Documents ................................................................... 28

J.      Successors and Assigns................................................................................. 28

K.      Closing of Case ............................................................................................ 28

L.      Governing Law ...................................................................................... 28

M.      Section Headings ................................................................................. 28

N.      Further Information............................................................................... 28

Article XI. Retention of Jurisdiction...........................................................................29

Article XII. Modification, Revocation, or Withdrawal of the Plan ...............................30

A.      Modification of Plan ............................................................................ 30

B.      Revocation, Withdrawal, or Non-Consummation ................................. 31

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

---

### CHAPTER 11 PLAN OF LIQUIDATION

---

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned bankruptcy proceeding, hereby proposes the following plan of liquidation pursuant to section 1121(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*.

Within the Plan, reference is made to the Disclosure Statement, including the exhibits thereto, which provides a discussion of the Debtor's history, business, results of operations, and properties, and a summary and analysis of the Plan.

All holders of Claims and Equity Interests are encouraged to consult the Disclosure Statement and read the Plan carefully before voting to accept or reject the Plan.

Millerbernd Systems, Inc. (the "Debtor") has consented to this Chapter 11 Plan of Liquidation and supports its confirmation.

The Committee contends that this Chapter 11 Plan is in the best interests of the Estate and its creditors because the appointment of a chapter 7 trustee would cost significantly more money. The proposed Trustee is familiar with this case and has been for over six months. Proposed counsel to the Trustee is similarly situated and will not charge the estate for the distribution of those assets on a percentage basis – which is the compensation structure for a chapter 7 trustee.

The Committee urges each creditor to vote in favor of the Chapter 11 Plan and believes that this Disclosure Statement adequately represents the treatment each class of creditors will receive.

# ARTICLE I.
## DEFINITIONS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

### A.    Rules of Interpretation, Computation of Time, and Governing Law

1.    For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; (b) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document, an exhibit to be Filed, or an exhibit already Filed, shall mean such document or exhibit, as it is or as it may be amended, modified or supplemented; (d) unless otherwise specified, all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan; (e) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form in the Plan that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning assigned to such term in the Bankruptcy Code.

2.    Except as otherwise specifically provided herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

3.    Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture, or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Minnesota, without giving effect to the principles of conflict of laws thereof.

### B.    Defined Terms

Unless the context otherwise requires, the following terms shall have the meanings ascribed to them below when used in capitalized form herein:

1.    *Administrative Claim* means a Claim for costs and expenses of administration of the Chapter 11 Case Allowed under section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, incurred after the Petition Date, including, but not limited to:  (a) any actual and necessary costs and expenses of preserving the Debtor's Estate and operating the business of the Debtor (such as wages, salaries, commissions for services, and payments for leased equipment); (b) compensation for legal, consulting, accounting, and other services and reimbursement of expenses Allowed by the Bankruptcy Court under section 330, 331, or 503(b) of the Bankruptcy Code to the extent incurred prior to the Effective Date; (c) all fees and charges assessed against the Debtor's Estate under section 1930, chapter 123 of title 28 of the

United States Code; and (d) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court.

2.      *Administrative Claims Bar Date* shall mean sixty (60) days after the Effective Date or such later date as either (a) the Bankruptcy Court may establish or (b) the Creditor Trust may set in its reasonable discretion by filing a notice on the docket in the Chapter 11 Case extending such Administrative Claims Bar Date by a minimum of 15 days, which may be further extended. Service of such notice to extend the Administrative Claims Bar Date shall be deemed sufficient if served by the Creditor Trust on: (a) the United States Trustee and (b) all parties that have requested notice in the Chapter 11 Case or that otherwise receive notice through the Court's CM/ECF electronic filing system.

3.      *Allowed* means, with respect to any Claim or Equity Interest, except as otherwise provided herein, any of the following:  (a) a Claim or Equity Interest that has been scheduled by the Debtor in its Schedules as other than disputed, contingent, or unliquidated and as to which (i) the Debtor or any other party in interest has not Filed an objection or (ii) no contrary proof of Claim has been Filed; (b) a Claim or Equity Interest that either is not a Disputed Claim or Equity Interest or has been Allowed by a Final Order; (c) a Claim or Equity Interest that is Allowed:  (i) in any stipulation with the Debtor of the amount and nature of such Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court; (ii) in any stipulation with the Debtor of the amount and nature of such Claim executed on or after the Confirmation Date and, to the extent necessary, approved by the Bankruptcy Court; or (iii) in any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan; (d) a Claim relating to a rejected executory contract or unexpired lease that (i) is not a Disputed Claim or (ii) has been allowed by a Final Order; or (e) a Claim or Equity Interest that is Allowed pursuant to the terms of the Plan.

4.      *Approval Transaction* shall have the meaning set forth in Article VI.D of the Plan.

5.      *Avoidance Actions* mean any and all claims and causes of action against any Entity arising under sections 506, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or any other section of the Bankruptcy Code, and including any claims existing under the law of any state that are available to a trustee or debtor in possession pursuant to any such section of the Bankruptcy Code.

6.      *Ballot* means each of the ballot forms distributed to each Holder of an Impaired Claim in which the Holder is to indicate acceptance or rejection of the Plan.

7.      *Bankruptcy Code* means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. § 101, *et seq*., as amended from time to time.

8.      *Bankruptcy Court* means the United States Bankruptcy Court for the District of Minnesota.

9.      *Bankruptcy Rules* are, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as both may be amended from time to time.

10.     *Bar Date* means August 22, 2018, the date established by that certain *Notice of Chapter 11 Bankruptcy Cases* [Docket No. 8] as the last date to File Claims against the Estate arising prior to the Petition Date for all parties in interest.

11.     *Bluco* shall mean Bluco Corporation.

12.     *Business Day* means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Bankruptcy Rule 9006(a)).

13.     *Cash* means legal tender of the United States of America or equivalents thereof.

14.     *Causes of Action* mean any claim, cause of action, chose in action, action, suit, demand, and any other debt, obligation, right, damage, remedy, controversy, agreement, promise, lien, variance, trespass, power, privilege, license, franchise, judgment, third-party claim, subrogation claim, guaranty claim, contribution claim, reimbursement claim, indemnity claim, counterclaim, right of setoff or recoupment, crossclaim, claim objection, defense to claim, and liability whatsoever of any kind or character relating to any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, direct or derivative, existing or hereafter arising, in law, equity, or otherwise.  Cause of Action also includes:  (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity belonging to the Estate; (b) any claim pursuant to sections 362, 502, or 510 of the Bankruptcy Code and any analogous provisions of applicable state law belonging to the Estate; (c)  any claim, right or cause of action related to any and all Avoidance Actions (including, but not limited to, any fraudulent conveyance or fraudulent transfer claims the Debtor may have pursuant to sections 544, 548 and 550 of the Bankruptcy Code or applicable non-bankruptcy law); (d) any claim or defense including, but not limited to fraud, mistake, duress, and usury, and any other defenses belonging to the Estate pursuant to section 558 of the Bankruptcy Code; and (e) any claim, right, or cause of action against any insiders, officers, directors, recipients of a fraudulent transfer, and/or related entities.

15.     *Chapter 11 Case* means the case commenced under chapter 11 of the Bankruptcy Code by the Debtor on the Petition Date currently pending before the Bankruptcy Court, and identified as Case No. 18-41286 (Bankr. D. Minn.).

16.     *Chase* means JPMorgan Chase Bank, N.A.

17.     *Claim* means a "Claim" (as defined in section 101(5) of the Bankruptcy Code) against the Debtor, including, but not limited to: (a) any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance of the Debtor, if such performance gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

18.     *Class* means a category of Holders of Claims or Equity Interests as set forth in Article III of the Plan.

19.     *Committee* means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case.

20.     *Confirmation* means the entry of the Confirmation Order, subject to all conditions specified in Article VIII.B herein having been satisfied.

21.     *Confirmation Date* means the date upon which the Confirmation Order is entered on the docket in the Bankruptcy Case.

22.     *Confirmation Hearing* means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider Confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code, as the same may be adjourned from time to time.

23.     *Confirmation Order* means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

24.     *Consummation* means the occurrence of the Effective Date.

25.     *Creditor Trust* means a common law trust to be established pursuant to the Plan for the sole and exclusive benefit of the Holders of Allowed Claims.

26.     *Creditor Trust Agreement* means that agreement to be executed on or before the Effective Date among the Debtor, the Committee, and the Creditor Trustee establishing the terms and conditions of the Creditor Trustee and the powers of the Creditor Trustee and filed with the Court no later than the 10th day before the Confirmation Hearing.

27.     *Creditor Trust Assets* shall mean all of the Debtor's tangible and intangible assets and its Estate assets, plus all proceeds, earnings, and replacements arising from or relating to these assets and all assets acquired by the Creditor Trust at any time, including, but not limited to: (i) all Cash held by the Debtor (or its counsel or other third parties, on its behalf, including deposits); (ii) all of the Debtor's right title and interest in and to all Causes of Action, including the proceeds thereof; (iii) all rights of the Debtor under the Plan, the Confirmation Order, and all other orders entered by the Bankruptcy Court in this Chapter 11 Case on or prior to the Effective Date; and (iv) all books and records related to the Debtor or its Estate.  The Creditor Trust Assets shall include the Sale Proceeds, including the Segregated Funds, provided that the Creditor Trust's right, title, and interest in and to the Segregated Funds are subject to the security interests of the Equipment Finance Lenders in such Segregated Funds as finally determined via agreement or through litigation and as established, with respect to Chase and HP, pursuant to the Sale Order.

28.     *Creditor Trust Expenses* mean the reasonable expenses of administering the Creditor Trust, as provided for in the Creditor Trust Agreement.

29.     *Creditor Trustee* shall mean such Entity, including any replacement thereof or successor thereto, designated by the Committee to serve as trustee for the Creditor Trust and to

oversee the liquidation of the Creditor Trust Assets for the benefit of Creditor Trust beneficiaries in accordance with the Plan and the Creditor Trust Agreement.  The initial Creditor Trustee shall be Ronald Leaf of Platinum Management, LLC.

30.      *Debtor* or *Debtor in Possession* means Millerbernd Systems, Inc., a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

31.      *Disclosure Statement* means the written Disclosure Statement for this Plan, as amended, supplemented, or modified from time to time, and that is prepared and distributed in accordance with section 1125 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

32.      *Disputed Claims or Equity Interest* means a Claim or Equity Interest, or any portion thereof:  (i) listed on the Schedules as unliquidated, disputed, or contingent; (ii) is the subject of an objection or request for estimation Filed or is otherwise disputed by the Debtor or any other party in interest in accordance with applicable law and which objection has not been withdrawn, resolved, or overruled by a Final Order of the Bankruptcy Court; (iii) such Claim is in excess of the amount scheduled as other than disputed, contingent, or unliquidated; or (iv) is otherwise disputed by the Debtor or any other party in interest in accordance with applicable law, which dispute has not been withdrawn, resolved, or overruled by a Final Order.

33.      *Distributable Proceeds* means the Cash proceeds of the Creditor Trust, net of Creditor Trust Expenses and a reasonable reserve to ensure payment of Creditor Trust Expenses, available for Distribution by the Creditor Trust in accordance with this Plan and the Creditor Trust Agreement.

34.      *Distribution* means any consideration given to any Entity by the Debtor under the Plan.

35.      *Distribution Address* shall have the meaning set forth in Article V.C of the Plan.

36.      *Effective Date* means, with respect to the Debtor, the date selected by the Committee, which is a Business Day after the Confirmation Date on which all conditions specified in Article VIII.C herein have been satisfied for the Debtor and no stay of the Confirmation Order is in effect.

37.      *Entity* means a Person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an Estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, the United States Trustee, or any other entity.

38.      *Equipment Finance Lenders* mean, collectively, TCF, Bluco, Wells Fargo, Chase, and HP.

39.      *Equity Interests* means any interest in the Debtor, including, without limitation, (i) a share in a corporation, whether or not denominated "stock," or similar security, and whether or not issued, unissued, authorized, or outstanding; (ii) a membership interest in a limited liability

6

company; (iii) an interest of a limited partner in a limited partnership; (iv) an interest of a general partner in a general partnership; or (v) a warrant, option, contract, or right to purchase, sell, or subscribe to a share, security, or interest of a kind specified in (i), (ii), (iii), or (iv) of this definition.

40.     *Estate* means the estate of the Debtor created pursuant to section 541 of the Bankruptcy Code upon commencement of the Chapter 11 Case.

41.     *Federal Rules* means the Federal Rules of Civil Procedure, as amended from time to time.

42.     *File or Filed* means file or filed with the Bankruptcy Court via CM/ECF or via the Clerk's office in this Chapter 11 Case.

43.     *Final Decree* means the decree contemplated under Bankruptcy Rule 3022.

44.     *Final Order* means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, with respect to the subject matter, that has not been reversed, stayed, modified, or amended, and is no longer subject to appeal, *certiorari* proceeding, or other proceeding for review, re-argument, or rehearing, and as to which no appeal, *certiorari* proceeding, or other proceeding for review, re-argument, or rehearing has been timely requested or is then pending and the time to file any such appeal, *certiorari* proceeding, or other proceeding for review, re-argument, or rehearing has expired or as to which any right to appeal, petition for *certiorari*, reargue, or seek rehearing shall have been waived in writing in form and substance satisfactory to the Committee.

45.     *Forfeited Distributions* means undeliverable or unclaimed Distributions relating to Allowed Claims, that are deemed forfeited pursuant to the Plan.

46.     *Governmental Entities* means the United States, any of the individual fifty states, any commonwealth, district, territory, municipality, foreign state, department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a foreign state, or other foreign or domestic government.

47.     *Holder* means any Entity owning or holding a Claim or Equity Interest.

48.     *HP* means HP Financial Services.

49.     *Impaired* means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

50.     *Insider* shall have the meaning set forth in section 101(31) of the Bankruptcy Code.

51.     *Lien* means any charge against or interest in property to secure payment of a debt or performance of an obligation.

52.     *Other Secured Claims* include, but shall not be limited to, the Allowed Secured Claims of the following entities: Chase and HP.

7

53.     *Oversight Committee* means a committee consisting of those members of the Committee who desire to serve on the Oversight Committee, which will have the approval rights set forth in the Creditor Trust Agreement or the Plan.

54.     *Person* means a "person" as defined in section 101(41) of the Bankruptcy Code.

55.     *Petition Date* means April 23, 2018.

56.     *Plan* means this Chapter 11 Plan of Liquidation, including, without limitation, any exhibits, supplements, appendices, or schedules thereto, either in its present form or as it may be amended, modified, altered, or supplemented from time to time.

57.     *Priority Claim* means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

58.     *Priority Tax Claim* means a Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

59.     *Professional* means any Person or other Entity that either (a) has been retained in the Chapter 11 Case by a Final Order of the Bankruptcy Court pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code or otherwise, potentially including, but not limited to: Steven B Nosek P. A.; Bassford Remele, P. A.; Goldstein & McClintock LLLP and Platinum Management, LLC a/k/a Platinum Group or (b) seeks compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to section 503(b)(4) of the Bankruptcy Code.

60.     *Pro Rata* means proportionately so that with respect to an Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of a particular Allowed Claim to (ii) the amount of that particular Allowed Claim, is the same as the ratio of (b)(i) the amount of property distributed on account of all Allowed Claims of the Class in which the particular Allowed Claim is included to (ii) the amount of all Allowed Claims in that Class.

61.     *Rejection Claims Bar Date* means the thirtieth (30th) day after the Effective Date. The Holder of any such Claims covered by the preceding sentence not Filed within such time shall be forever barred from asserting such Claims against the Debtor, its Estate, and its respective properties and interests.

62.     *Releases* means the releases described in Article IX.F of the Plan.

63.     *Released Parties* means each Entity granted a release in Article IX.F of the Plan.

64.     *Sale Proceeds* means the amount of Cash received by the Debtor in connection with the sale of the Debtor's assets in the Sale Transaction.

65.     *Sale Order* means the *Finding of Fact, Conclusions of Law, and Agreed Order Approving Sale* dated March 25, 2019 [Docket No. 203].

66.     *Sale Transaction* means the sale of certain of the Debtor's assets pursuant to that certain Asset Purchase Agreement dated as of February 14, 2019 by and between the Debtor and Burwell Enterprises (or one of its affiliates) [*see* Docket No. 171] which was approved by the Sale Order.

67.     *Schedules* means the schedules of assets and liabilities and the statement of financial affairs Filed by the Debtor in accordance with section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended.

68.     *Secured Claim* means:  (a) a Claim that is secured by a Lien on a property in which an Estate has an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in an Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) a Claim Allowed under the Plan as a Secured Claim.

69.     *SBT* means Security Bank & Trust.

70.     *Segregated Funds* mean the $900,000 of the Sale Proceeds designated for the purchase of Equipment under the APA that was deposited by the Debtor in a segregated account pursuant to the terms of the Sale Order.

71.     *TCF* means TCF Equipment Finance.

72.     *Unimpaired Claim* means a Claim or Interest that is not Impaired.

73.     *Unsecured Claim* means any Claim against the Debtor other than an Administrative Claim, a Priority Tax Claim, a Secured Claim, a Priority Claim, or an Equity Interest.

74.     *Wells Fargo* means Wells Fargo Equipment Finance.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS; PRIORITY TAX CLAIMS

### A.     Administrative Claims

Each Allowed Administrative Claim shall be paid by the Debtor (prior to the Effective Date) or the Creditor Trustee (on and after the Effective Date) (i) in full, in Cash, in such amounts as such Administrative Claim is Allowed by the Bankruptcy Court upon the later of the Effective Date or the date upon which such Administrative Claim is Allowed or (ii) upon such other terms as may be agreed upon between the Holder of such Administrative Claim and the Debtor or the Creditor Trustee (as applicable).  Any application for the payment of any Administrative Claims, such as and including the payment of any fees or reimbursement of expenses of any Professional, shall be Filed with the Bankruptcy Court no later than the Administrative Claims Bar Date.

### B.      Priority Tax Claims

On, or as soon as reasonably practicable after, the latest of the Effective Date or the date such Priority Tax Claims becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, (i) Cash equal to the unpaid portion of such Allowed Priority Tax Claim or (ii) such other treatment as to which the Debtor (prior to the Effective Date) or Creditor Trustee (on and after the Effective Date) and such Holder have agreed upon.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

### A.      Summary

1.      The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation and Distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.   In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified, but the treatment for such unclassified claims are set forth in Article II.

2.      The classification of Claims against and Equity Interests in the Debtor pursuant to the Plan is as follows:

| Class | Impairment | Voting Right |
|---|---|---|
| Class 1 – Priority Claims – §507(a)(4) | Not Impaired | Not Entitled to vote |
| Class 2 – Secured Claim of SBT | Not Impaired | Not Entitled to vote |
| Class 3 – Secured Claim of TCF | Impaired | Entitled to vote |
| Class 4 – Secured Claim of Bluco | Impaired | Entitled to vote |
| Class 5 – Secured Claim of Wells Fargo | Impaired | Entitled to vote |
| Class 6 – Other Secured Claims | Impaired | Entitled to vote |
| Class 7 – General Unsecured Claims | Impaired | Entitled to vote |

10

| Class 8 – Insider Unsecured Claims | Impaired | Entitled to vote |
|---|---|---|
| Class 9 – Equity Interests | Impaired | Not Entitled to vote |

### B.    Treatment of Claims and Equity Interests

1.    Class 1:  Priority Claims – §507(a)(4)

(a)    Treatment:  All Allowed claims entitled to priority under §507(a)(4) of the Bankruptcy Code shall be paid in full, in cash, upon the later of the Effective Date of this Plan, or the date on which such claim is Allowed by a Final Order.  To the extent that the Allowed amount of any Class 1 Claim exceeds the priority limitation of Code § 507(a)(4), the Holder of such a claim shall have an Allowed Class 7 Claim to the extent of the excess.

(b)    Voting:  Class 1 Claims are Unimpaired.  Holders of Class 1 Claims are deemed to accept the Plan and shall not be entitled to vote.

2.    Class 2:  Secured Claim of SBT

(a)    Treatment:  As a result of the Sale Transaction, SBT received Cash in an amount equal to the value of the collateral securing its Allowed Claim from the Sale Proceeds.  If the Allowed Claim of the Holder of a Class 2 Claim exceeds the value of the Cash it received, such Holder shall have an Unsecured Claim for the difference, which deficiency shall be treated as a Class 7 Claim.

(b)    Voting:  Class 2 is Unimpaired.  The Holder of the Class 2 Claim is not entitled to vote to accept or reject the Plan.

3.    Class 3: Secured Claim of TCF

(a)    Treatment:  TCF shall receive Cash in an amount equal to the value of the collateral securing its Allowed Claim from the Segregated Funds after such time that its Secured Claim has been determined via agreement or through litigation on the terms of such agreement or Final Order.  If the secured portion of a Class 3 Claim is less than the value of its total Allowed Claim, such Holder shall have an Unsecured Claim for the difference, which deficiency shall be treated as a Class 7 Claim. To the extent that the Debtor, Committee and TCF, or Trustee and TCF cannot resolve such differences as to the value of claims and secured portion of such claim, such resolution may take place after confirmation.

(b)    Voting:  Class 3 is Impaired.  The Holder of the Class 3 Claim is entitled to vote to accept or reject the Plan.

4.     Class 4: Secured Claim of Bluco

(a)     Treatment: Bluco shall receive Cash in an amount equal to the value of the collateral securing its Allowed Claim from the Segregated Funds after such time that its Secured Claim has been determined via agreement or through litigation on the terms of such agreement or Final Order.  If the secured portion of a Class 4 Claim is less than the value of its total Allowed Claim, such Holder shall have an Unsecured Claim for the difference, which deficiency shall be treated as a Class 7 Claim.  To the extent that the Debtor, Committee and Blueco, or Trustee and Bluco cannot resolve such differences as to the value of claims and secured portion of such claim, such resolution may take place after confirmation.

(b)     Voting: Class 4 is Impaired.  The Holder of the Class 4 Claim is entitled to vote to accept or reject the Plan.

5.     Class 5: Secured Claim of Wells Fargo

(a)     Treatment: Wells Fargo shall receive Cash in an amount equal to the value of the collateral securing its Allowed Claim from the Segregated Funds after such time that its Secured Claim has been determined via agreement or through litigation on the terms of such agreement or Final Order.  If the secured portion of a Class 5 Claim is less than the value of its total Allowed Claim, such Holder shall have an Unsecured Claim for the difference, which deficiency shall be treated as a Class 7 Claim.  To the extent that the Debtor, Committee and Wells Fargo, or Trustee and Wells Fargo cannot resolve such differences as to the value of claims and secured portion of such claim, such resolution may take place after confirmation.

(b)     Voting: Class 5 is Impaired.  The Holder of the Class 5 Claim is entitled to vote to accept or reject the Plan.

6.     Class 6:  Other Secured Claims

(a)     Treatment:   As soon as reasonably practicable after the resolution and payment of Class 4, Class 5, and Class 6 Claims, Holders of Other Secured Claims (or the then-Holder of such claim) shall receive cash equal to the value of the secured portion of its Claim as determined by, and pursuant to, the terms of the Sale Order.  To the extent that the secured portion of the Allowed Claim of a Class 6 Claim is less than the value of its total Allowed Claim, such Holder shall have an Unsecured Claim for the difference, which deficiency shall be treated as a Class 7 Claim.

(b)     Voting:  Class 6 is Impaired.  Holders of Class 6 Claims are entitled to vote to accept or reject the Plan.

7.      Class 7: General Unsecured Claims

        (a)      Classification:  Class 6 consists of all general, non-Insider Unsecured Claims against the Debtor.

        (b)      Treatment:  Except to the extent that a Holder of an Allowed Claim in Class 7 agrees to a less favorable treatment, each such Holder shall be paid its Pro Rata share of the Distributable Proceeds after Holders of Allowed Claims in Classes 1 through 6 have been satisfied pursuant to the terms of the Plan.

        (c)      Voting:  Class 7 is Impaired.  Holders of Class 7 Claims are entitled to vote to accept or reject the Plan.

8.      Class 8:  Insider Unsecured Claims

        (a)      Treatment:  Except to the extent that a Holder of an Allowed Insider Claim in Class 8 agrees to a less favorable treatment, each such Holder shall be paid its Pro Rata share of Distributable Proceeds after Holders of Allowed Claims in Classes 1 through 7 have been satisfied pursuant to the terms of the Plan.

        (b)      Voting:  Class 8 is Impaired.  Holders of Class 8 Claims are entitled to vote to accept or reject the Plan.

9.      Class 9: Equity Interests

        (a)      Treatment:  All equity interests will be canceled on the Effective Date.

        (b)      Voting:  Class 9 is impaired.  Holders of Class 9 Equity Interests are deemed to reject the Plan, and are therefore not entitled to vote on the Plan.

## ARTICLE IV. VOTING:  TREATMENT OF DISPUTED CLAIMS

### A.      Objections to Claims; Prosecution of Disputed Claims

1.      After the Effective Date, the Creditor Trustee shall object (and shall take over, and continue prosecuting, any outstanding claims objections initiated by the Debtor or the Committee) to the allowance of any Disputed Claims as the Creditor Trustee determines is reasonable, in its sole discretion.  All objections shall be pursued to settlement or to Final Order; provided, however, that no Bankruptcy Court approval shall be required in order for the Creditor Trustee to settle and/or compromise any Claim, objection to Claim, Cause of Action, or right to payment of or against the Debtor or its Estate.

2.      Any objections to Claims shall be resolved or litigated by the Creditor Trustee, in his sole discretion, subject to the approval of the Oversight Committee with respect to the resolution of a Disputed Claim with a face or scheduled amount in excess of $100,000.  The

13

Creditor Trustee shall have sole and complete discretion to not review and/or object to proofs of Claim, including, without limitation, to not object to claims below a certain dollar amount to the extent the Creditor Trustee believes that such review and/or objection would be uneconomical.

### B.      Estimation of Claims

The Creditor Trustee may at any time request that the Bankruptcy Court estimate any contingent or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor, Committee, or the Creditor Trustee previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Subject to the provisions of section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or Disputed Claim, the amount so estimated shall constitute the maximum allowable amount of such Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Creditor Trustee may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### C.      Payments and Distributions on Disputed Claims

No interest shall be paid on Disputed Claims that later become Allowed Claims or with respect to any distribution to such Holder. No distribution shall be made with respect to all or any portion of any Claim, a portion of which or all of which is a Disputed Claim, pending the entire resolution thereof.

### D.      Enforcement of Bar Date Order

In accordance with section 502(b)(9) of the Bankruptcy Code, any Entity that failed to File a proof of Claim by the applicable Bar Date and was not otherwise permitted to File a proof of Claim after the applicable Bar Date by a Final Order of the Bankruptcy Court is and shall be permanently barred, estopped, and enjoined from asserting any Claim against the Debtor (i) in an amount that exceeds the amount, if any, that is identified in the Schedules on behalf of such Entity as undisputed, noncontingent, and liquidated; or (ii) of a different nature or a different classification than any Claim identified in the Schedules on behalf of such Entity. All Claims Filed after the applicable Bar Date and as to which no Final Order has been entered by the Bankruptcy Court determining that such Claims were timely Filed shall be disallowed and expunged. Any Distribution on account of such Claims shall be limited to the amount, if any, listed in the applicable Schedules as undisputed, noncontingent, and liquidated.

## ARTICLE V.
## DISTRIBUTIONS

### A.  Timing and Effective Date of Distributions

The Creditor Trustee shall use his reasonable efforts to make an initial distribution under the Plan as soon as reasonably possible after the Effective Date.  Distributions made to Holders of Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made on the Effective Date.

### B.  Method of Distributions to Holders of Claims

Distributions made pursuant to the Plan, shall be in U.S. dollars and, at the option and in the sole discretion of the Creditor Trustee, be made by (a) checks drawn on or (b) wire transfers from a domestic bank selected by the Creditor Trustee.

### C.  Delivery of Distributions

Subject to the provisions of Rule 2002(g) of the Bankruptcy Rules, and except as otherwise provided herein, distributions and deliveries to Holders of Allowed Claims shall be made at the address (the "*Distribution Address*") of each such Holder as set forth on the Schedules filed with the Bankruptcy Court, unless superseded by the address set forth on a timely filed proof(s) of Claim or some other writing Filed with the Bankruptcy Court and served upon the Creditor Trust.

### D.  Tax Identification Numbers and OFAC Certifications

Notwithstanding anything in the Plan to the contrary, prior to making Distributions hereunder, the Creditor Trustee shall require all Holders to furnish to him: (a) its Employer or Taxpayer Identification Number as assigned by the Internal Revenue Service on a Form W-9 and (b) a certification that the Holder is not a person or entity with whom it is illegal for a U.S. person to do business under Office of Foreign Assets Control ("*OFAC*") sanctions regulations and/or the list of Specially Designated Nationals and Blocked Persons (collectively, the "*Pre-Distribution Certifications*").  Pre-Distribution Certification forms will be mailed to the Distribution Address for each Holder prior to Distributions being made, and Holders shall have forty-five (45) days from the date of mailing to return the executed Pre-Distribution Certifications.  Any Holder that fails to return the executed Pre-Distribution Certifications within such forty-five (45) day period shall be deemed to have forfeited its right to receive Distributions and shall be forever barred and enjoined from asserting any right to Distributions made prior to the Creditor Trustee receiving its executed Pre-Distribution Certifications (such a Holder would only be entitled to a Pro-Rata Share of remaining future Distributions, if any).  Any Distributions that are forfeited pursuant to this provision will be returned to the Creditor Trustee and become property of the Estate.

### E.  Undeliverable Distributions

1.  Holding of Undeliverable Distributions

If any Distribution to any Holder of an Allowed Claim is returned to the Creditor Trustee as undeliverable, no further Distributions shall be made to such Holder unless and until the Creditor Trustee is notified by such Holder, in writing, of such Holder's then-current address.  Upon such an occurrence, the appropriate Distribution shall be made as soon as reasonably practicable after such Distribution has become deliverable.   All Entities ultimately receiving previously undeliverable Cash shall not be entitled to any interest or other accruals of any kind.  Nothing contained in the Plan shall require the Creditor Trustee to attempt to locate any Holder of an Allowed Claim.

2.      Failure to Claim Undeliverable Distributions

Any Holder of an Allowed Claim entitled to an undeliverable or unclaimed Distribution that does not provide notice of such Holder's correct address to the Creditor Trustee within ninety (90) days after the date of the initial Distribution made by the Creditor Trustee to such Holder shall be deemed to have forfeited its claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed Distribution against the Creditor Trustee.  If, after ninety days, Distributions remain unclaimed, unclaimed Distributions will become Forfeited Distributions and such amounts shall become the property of the Estate.  In the event that the aggregate amount of the Forfeited Distributions is less than $20,000.00 and the Creditor Trustee determines, in his reasonable business judgment, that a further Distribution is not economically justifiable (for example, a Distribution would result in *de-minimis* payments after cost) the Forfeited Distributions may be donated to the Boy Scouts of America, Friends of the Boundary Waters, or both.

F.      **Withholding and Reporting Requirements**

In connection with the Plan and all Distributions thereunder, the Creditor Trustee shall comply with all tax withholding and reporting requirements imposed by any U.S. federal, state or local or non-U.S. taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  The Creditor Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.  Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution, and (b) the Creditor Trustee reserves the option, in his or her discretion, to not make a Distribution to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Creditor Trustee for the payment and satisfaction of such tax obligations or has, to the Creditor Trustee's satisfaction, established an exemption therefrom.

G.      **Time Bar to Cash Payments**

Checks issued by the Creditor Trustee on account of Allowed Claims shall be null and void if not negotiated within forty-five (45) days from and after the date of issuance thereof.  Requests for reissuance of any check that has become null and void shall be made directly to the Creditor Trustee by the Holder of the Allowed Claim within thirty (30) days of the check becoming null and void.  After such thirty (30) day period has elapsed, all claims relating to such voided checks

16

shall be discharged and forever barred.  In the case of checks issued on account of Allowed Claims but not negotiated within forty-five (45) days of issuance and for which no request for reissuance is made before thirty (30) days after issuance, the amounts at issue shall be considered to be a Forfeited Distribution.  Any creditor or claimant that fails to negotiate its check and seek reissuance shall be entitled to no further distributions on any Claim, regardless of Class.

### H.    Interest

Unless otherwise required by applicable bankruptcy law, or specifically provided for herein, post-petition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest or fees accruing on or after the Petition Date on any Claim.

In accordance with Section 502(b)(2) of the Bankruptcy Code, the amount of all prepetition Unsecured Claims against the Debtor shall be calculated as of the Petition Date. Except as otherwise explicitly provided in the Plan, in Section 506(b) of the Bankruptcy Code, or by Final Order, no Holder of a prepetition Claim shall be entitled to or receive interest or fees relating to such Claim.

### I.    Fractional Dollars; De Minimis Distributions

Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down.  The Creditor Trustee will not make any payment of less than fifty dollars ($50.00) on account of any Allowed Claim, unless a specific request therefor is made in writing to the Creditor Trustee on or before ninety (90) days after the Effective Date.

### J.    Set-Offs

Consistent with applicable law, the Creditor Trustee may, but shall not be required to, set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim), the claims, rights, and causes of action of any nature that the Debtor, its Estate, or the Creditor Trustee may hold against the Holder of such Allowed Claim; provided, however, that neither the failure to effect such a set off nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtor, its Estate, or the Creditor Trustee of any such claims, rights, and Causes of Action that the Debtor, its Estate, the Creditor Trust, or the Creditor Trustee may possess against such Holder.

### K.    Settlement of Claims and Controversies

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims or controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim with respect thereto, or any distribution to be made on account of such an Allowed Claim.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or

17

settlement of all such Claims or controversies, and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and is fair, equitable, and reasonable.

## ARTICLE VI.
## IMPLEMENTATION OF THE PLAN

### A.    Creditor Trust

The Creditor Trust shall be established as of the Effective Date for the benefit of all creditors of the Estate holding Allowed Claims and shall be governed by the Creditor Trust Agreement.

Ronald Leaf shall be designated as Creditor Trustee.  The Creditor Trustee will owe a fiduciary duty, consistent with the duties of trustees under Minnesota law, to beneficiaries of the Creditor Trust.

The Creditor Trustee shall administer the Creditor Trust Assets pursuant to the Plan and the Creditor Trust Agreement from and after the Effective Date and shall have the powers set forth in the Creditor Trust Agreement, which powers, subject to the rights of the Oversight Committee, shall include the right to operate, sell or dispose the Creditor Trust Assets, the right to object to or continue objecting to Claims, pursue Causes of Action and such other powers as are customary for a trustee of a creditor trust of this nature.

### B.    Vesting of Assets

On the Effective Date of the Plan, the Creditor Trust Assets shall be transferred to and vest in the Creditor Trust and be deemed contributed thereto, subject to the terms of the Plan.  For the avoidance of all doubt, anything that may have been deemed property of the Debtor or its Estate shall, as of the Effective Date, become, and be forever deemed, property of the Creditor Trust. The entry of the Confirmation Order shall automatically be deemed to authorize and direct the Debtor to take such steps as may be necessary or appropriate to effectuate such transfer and contribution of its property to the Creditor Trust, subject to oversight from the Committee or the Creditor Trustee, as applicable.

Nothing in this Plan or the Creditor Trust shall preclude payment of: (i) statutory fees under 28 U.S.C. § 1930 to the extent unpaid on the Effective Date or arising after the Effective Date; and (ii) the Creditor Trust Expenses in accordance with the Plan and the Creditor Trust Agreement.

The Creditor Trust shall dispose of Estate Assets for the benefit of creditors as the Trustee sees fit, with the exception that any transaction over the value of $100,000 shall be approved by te Court.

### C.    Dissolution of Debtor

When the Creditor Trustee determines as necessary or appropriate under the circumstances (including with respect to the pursuit of causes of action in the name of the Estate), the Debtor

18

shall be dissolved without any further action by the stockholders, officers, or directors of the Debtor. The Creditor Trustee may, in his or her discretion, file all necessary certificates of dissolution and take any other actions necessary or appropriate to reflect the dissolution of the Debtor under Minnesota state law, where the Debtor is incorporated. All applicable regulatory or governmental agencies shall accept any certificates of dissolution or other papers filed by the Creditor Trustee on behalf of the Debtor and shall take all steps necessary to allow and reflect the prompt dissolution of the Debtor as provided in the Plan, without the payment of any fee, tax, or charge and without need for the filing of reports or certificates, except as the Creditor Trustee may determine in his or her sole discretion. The Court may issue one or more Orders noting the Effective Date as evidence of the dissolution of the Debtor.

### D.    Oversight Committee

The Oversight Committee will be deemed formed on the Effective Date. The Oversight Committee shall have the right to approve the sale of any Creditor Trust Assets in a transaction (an *"Approval Transaction")* in which the value of such assets (individually or in the aggregate), or the resolution of any Claim to the extent the face or scheduled amount of such Claim exceeds, or reasonably could have been expected to exceed, $100,000.00.

The Creditor Trustee shall provide the Oversight Committee with reasonable written notice (not less than seven (7) days unless circumstances render such notice impracticable, in which case the Creditor Trustee will alert the members of the Oversight Committee in his correspondence of such shorter period for a response) of any Approval Transaction. The Creditor Trustee may provide notice by electronic mail to the members of the Oversight Committee and their representatives (if designated). In no event shall the Oversight Committee have less than two Business Days' notice to approve a transaction.

The Creditor Trustee will be authorized to proceed with an Approval Transaction, unless a majority of the members of the Oversight Committee provide written notice (including by electronic mail to the Creditor Trustee) of an objection to a particular transaction prior to the expiration of the notice period. If a majority of the members of the Oversight Committee provide written notice of their disapproval during the notice period, the Creditor Trustee may either: (a) alter or amend the terms of Approval Transaction until it is approved by a majority of the members of the Oversight Committee; (b) choose not proceed with Approval Transaction. No member of the Oversight Committee shall be entitled to compensation or expense reimbursement.

### E.    Corporate Action

Upon entry of the Confirmation Order, the Creditor Trustee is also authorized, without the need for any or further order of the Bankruptcy Court, to take any and all actions reasonably necessary to effectuate the Plan. The Creditor Trustee, upon the Effective Date, may retain and pay such law firms, accounting firms, experts, advisors, consultants, investigators, appraisers, auctioneers, brokers, or other professionals as he or she may deem necessary, in his or her sole discretion, in accordance with the terms of the Creditor Trust Agreement, and without Bankruptcy Court approval. The professionals retained by the Creditor Trustee are not required to be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation,

19

counsel and financial advisors of any party in the Chapter 11 Case and the Creditor Trustee shall be permitted to retain any such professional in light of the efficiencies implicit in continuity.

On the Effective Date, the authority, power, and incumbency of the persons then acting as directors of the Debtor shall be terminated and such directors shall be deemed to have resigned. The employment by the Debtor of each officer and all employees in the employment of the Debtor as of the Effective Date shall automatically on the Effective Date cease to be officers and employees of the Debtor. To the extent the Creditor Trust hires any prior employees of the Debtor, neither the Creditor Trustee nor the Creditor Trust shall be deemed a successor to the Debtor.

Upon the Effective Date of the Plan, the Creditor Trustee succeeds to such powers as would have been applicable to the Debtor's officers, directors, and shareholders.

### F.    Effective Date Transactions

The Effective Date shall occur, upon (a) the Debtor completing all transactions and executing all documents required to occur on the Effective Date hereunder and (b) the Debtor, within three (3) Business Days of the Effective Date, filing a Notice of Effective Date, which shall be provided to all Creditors via U.S. Mail and filed on the Court's CM/ECF docket.

### G.    Preservation of Rights

The Creditor Trustee shall be assigned all rights of the Debtor to commence and pursue any and all Causes of Action (under any theory of law, including, without limitation, the Bankruptcy Code, and in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Debtor's Chapter 11 Case) to the extent the Creditor Trustee deems appropriate, other than any Causes of Action against the Released Parties.

All Claims, Causes of Action, defenses, and counterclaims not expressly and specifically released in connection with the Plan, the Confirmation Order, or in any settlement agreement approved during the Chapter 11 Case, or as otherwise provided in the Confirmation Order or in any contract, instrument, release, indenture, or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code shall remain assets of and vest with the Creditor Trust, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, Claims, Causes of Action, defenses, and counterclaims have been listed or referred to in the Plan, the Schedules, or any other document filed with the Bankruptcy Court, and neither the Debtor nor the Creditor Trustee shall waive, relinquish, or abandon (nor shall they be estopped or otherwise precluded from asserting) any right, Claim, Cause of Action, defense, or counterclaim that constitutes property of the Estate:  (a) whether or not such right, Claim, Cause of Action, defense, or counterclaim has been listed or referred to in the Plan or the Schedules, or any other document filed with the Bankruptcy Court, (b) whether or not such right, Claim, Cause of Action, defense, or counterclaim is currently known to the Debtor, and (c) whether or not a defendant in any litigation relating to such right, Claim, cause of action, defense or counterclaim filed a proof of Claim in the Chapter 11 Case, filed a notice of appearance or any other pleading or notice in the Chapter 11 Case, voted for or against the Plan, or received or retained any consideration under the Plan.  Without in any manner limiting the generality of the foregoing reservation of rights, notwithstanding any otherwise applicable principal of law or

20

equity, without limitation, any principals of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, Claim, Cause of Action, defense, or counterclaim, or potential right, Claim, cause of action, defense, or counterclaim, in the Plan, the Schedules, or any other document filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Creditor Trustee's right to commence, prosecute, defend against, settle, and realize upon any rights, Claims, causes of action, defenses, or counterclaims that the Debtor or the Creditor Trustee has, or may have, as of the Effective Date. The Creditor Trustee may commence, prosecute, defend against, settle, and realize upon any rights, Claims, causes of action, defenses, and counterclaims in their sole discretion, in accordance with what is in the best interests, and for the benefit, of the Creditor Trustee. *See* Section II.D. of the Disclosure Statement for a summary of known causes of action that are being preserved for the benefit of, and assigned to, the Creditor Trust.

### H.    Cancellation of Notes, Instruments, and Debentures

On the Effective Date, except to the extent provided otherwise in the Plan, all notes, instruments, debentures, certificates, and other documents evidencing Claims against the Debtor shall be deemed canceled, terminated, and surrendered (regardless of whether such notes, instruments, debentures, certificates or other documents are in fact surrendered for cancellation to the appropriate indenture trustee or other such Person). On the Effective Date, any indentures to which the Debtor is a party shall be deemed canceled as permitted by section 1123(a)(5) of the Bankruptcy Code. All Claims against the Debtor shall be treated as provided hereunder, with Creditors entitled to distributions from the Creditor Trust as provided for herein.

### I.    Insurance Preservation

Nothing in the Plan, including any releases, shall diminish or impair the enforceability of any policies of insurance that may cover any claims against the Debtor or any other Entity.

### ARTICLE VII.
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Presumed Rejection

Any executory contracts or unexpired leases contained in the Schedule of Executory Contracts and Unexpired Leases which have not (i) expired by their own terms on or prior to the Effective Date, or (ii) been assumed, assumed and assigned, or rejected with the approval of the Bankruptcy Court, shall be deemed rejected by the Debtor as of the Effective Date. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejection of such executory contracts and unexpired leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code as provided for above.

### B.    Rejection Damages Claims

Except as otherwise provided in a Final Order approving the rejection of an executory contract or unexpired lease, Claims arising out of the rejection of an executory contract or unexpired lease must be filed with the Bankruptcy Court on or before the Rejection Claims Bar

21

Date. Any Claims not Filed by the Rejection Claims Bar Date will be forever barred from receiving a distribution from the Debtor and the Creditor Trust.

The Creditor Trust reserves the right to object to, settle, compromise, or otherwise resolve any Claim filed on account of a rejected executory contract or unexpired lease in the same manner as discussed hereunder for other Claims.

## ARTICLE VIII.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND THE EFFECTIVE DATE

### A.    Acceptance or Rejection of the Plan

1.    Acceptance by Impaired Classes

An Impaired Class of Claims will have accepted the Plan if the Holders of at least two-thirds in amount and more than one-half in number of the Allowed Claims in the Class actually voting have voted to accept the Plan, in each case not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code.

2.    Elimination of Classes

Any Class that does not contain any Allowed Claims or Equity Interests or any Claims or Equity Interests temporarily allowed for voting purposes under Federal Rule of Bankruptcy Procedure 3018, as of the date of the commencement of the Confirmation Hearing, will be deemed not included in the Plan for purposes of (i) voting to accept or reject the Plan and (ii) determining whether such Class has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

3.    Nonconsensual Confirmation

The Bankruptcy Court may confirm the Plan over the dissent of any Impaired Class if all of the requirements for consensual confirmation under subsection 1129(a), other than subsection 1129(a)(8), of the Bankruptcy Code and for nonconsensual confirmation under subsection 1129(b) of the Bankruptcy Code have been satisfied.  In the event that any impaired Class of Claims or Equity Interests shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Committee reserves the right to (i) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code or (ii) amend the Plan.

### B.    Conditions Precedent to Confirmation Date of the Plan

The occurrence of the Confirmation Date shall be subject to satisfaction of the following conditions precedent:

1.    The entry of the Confirmation Order in form and substance satisfactory to the Committee, and

2.     The Debtor being authorized to take all actions necessary or appropriate to enter into, implement, and consummate the Plan and other agreements or documents created in connection with the Plan.

### C.     Conditions Precedent to the Effective Date of the Plan

The occurrence of the Effective Date and the Consummation of the Plan are subject to satisfaction of the following conditions precedent:

1.     Confirmation Order.  The Confirmation Order as entered by the Bankruptcy Court shall be a Final Order in full force and effect, in form and substance reasonably satisfactory to the Committee.

2.     Effective Date Transactions.  One of the Effective Date transactions contemplated in Article VI.F shall have been completed.

### D.     The Confirmation Order

If the Confirmation Order is vacated for whatever reason, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in the Debtor; (ii) prejudice in any manner the rights of the Debtor; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtor.

## ARTICLE IX.
## EFFECT OF PLAN CONFIRMATION

### A.     Discharge of Claims

The Debtor will not receive a discharge under the Plan in accordance with section 1141 of the Bankruptcy Code.

### B.     Termination of Subordination Rights and Settlement of Related Claims

The classification and manner of satisfying all Claims and Equity Interests and the respective distributions and treatments hereunder take into account and/or conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise, and any and all such rights are settled, compromised and released pursuant to the Plan.  **The Confirmation Order shall permanently enjoin, effective as of the Effective Date, all Persons from enforcing or attempting to enforce any such contractual, legal, and equitable subordination rights satisfied, compromised, and settled in this manner; provided, however, that the Creditor Trustee shall preserve any such equitable subordination rights in (a) objecting to or continuing objections to Claims, (b) pursuing Causes of Action and/or (c) exercising such other powers as are customary for a trustee of a creditor trust of this nature.**

### C.    Injunction

1.      **Except as otherwise expressly provided in the Plan, all Entities that receive Distributions under the Plan and that have held, hold, or may hold Claims against or Equity Interests in the Debtor are permanently enjoined, from and after the Effective Date, from taking any of the following actions against any of the Debtor's Estate, Professionals, the Committee and its Professionals, the individual members of the Committee in their capacity as such, the Estate, the Creditor Trustee, or any of its property on account of any Claims or causes of action arising from events prior to the Effective Date: (i) commencing or continuing in any manner, any action, or other proceeding of any kind; (ii) enforcing, attaching, collecting, or recovering by any manner or in any place or means any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind; and (iv) asserting any defense or right of setoff, subrogation, or recoupment of any kind against any obligation, debt, or liability due to the Debtor.**

2.      **Except as otherwise provided in the Plan or the Confirmation Order, on and after the Confirmation Date (subject to the occurrence of the Effective Date), all Persons and Entities who have held, hold, or may hold Liens, Claims, or Interests in or against the Debtor or Interests in the Debtor are, with respect to any such Liens, Claims, or Interests, permanently enjoined from: (a) commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting the Creditor Trust or any of its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the foregoing Creditor Trust, or any property of any such transferee or successor; (b) enforcing against, levying upon, or attaching (including, without limitation, any pre-judgment attachment) the foregoing Creditor Trust, or any property of any such transferee or successor; (c) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree, claim, or order against the Creditor Trust, any of its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to the foregoing Creditor Trust; (d) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Liens, Claims, or Interests of any kind against or in the Creditor Trust, any of its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the foregoing Creditor Trust; (e) asserting any right of setoff, subordination, or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, its Estate, the Creditor Trust, any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Creditor Trust; and (f) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of this Plan.**

3.      **By accepting Distributions pursuant to the Plan, each Holder of an Allowed Claim receiving Distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth herein.**

24

### D.      Terms of Existing Injunctions or Stays

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105, 362, or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Case has been closed.  The Confirmation Order will permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively, or otherwise, of any Claims, Equity Interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities released pursuant to the Plan.

### E.      Exculpation

Subject to section 1125(e) of the Bankruptcy Code, neither the Debtor, its Estate, the Committee, the Oversight Committee, the Creditor Trust, nor any of their respective present or former advisors, attorneys, or agents acting in such capacity, shall have or incur any liability to, or be subject to any right of action by, the Debtor, its Estate, or any Holder of a Claim or an Equity Interest, or any other party in interest, or any of their respective agents, shareholders, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, (a) any act taken or omitted to be taken on or after the Petition Date, (b) the Disclosure Statement, the Plan, and the documents necessary to effectuate the Plan, (c) the solicitation of acceptances and rejections of the Plan, (d) the Releases or the solicitation thereof, (e) the Chapter 11 Case, (f) the administration of the Plan, (g) the distribution of property under the Plan, and (h) any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or the Chapter 11 Case, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan, except for, in each case, acts involving gross negligence or fraud.

### F.      Releases

#### 1.      Releases by the Debtor

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Estate, shall forever release, waive, and discharge all claims, obligations, suits, judgments, demands, debts, rights, Causes of Action, and liabilities, whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or in part on any act or omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to (i) the parties released pursuant to the Releases; (ii) the Disclosure Statement, the Plan, and the documents necessary to effectuate the Plan; (iii) the solicitation of acceptances and rejections of the Plan; (iv) the solicitation of the Releases; (v) the Chapter 11 Case; (vi) the property to be distributed under the Plan; or (viii) any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or the Chapter 11 Case, against (a) the Debtor's Professionals; (b) the Committee's Professionals; (c) each member of the Committee in its capacity as such; and (d) the Creditor Trustee.**

25

2.    **Releases by Holders of Claims and Interests**

**As of the Effective Date, all Holders of Allowed Claims and the current and former members, managers, Holders of Equity Interests, and employees of the Debtor (in their capacity as such) shall forever release, waive, and discharge all Claims, obligations, suits, judgments, demands, debts, rights, causes of action, and liabilities (other than the right to enforce the Debtor's obligations under the Plan and the contracts, instruments, releases, agreements, and documents delivered under the Plan, and in the event of gross negligence or fraud), whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or in part on any act or omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to (i) the Debtor; (ii) the parties released pursuant to the Releases; (iii) the Disclosure Statement, the Plan, and the documents necessary to effectuate the Plan; (iv) the solicitation of acceptances and rejections of the Plan; (v) the solicitation of other Releases; (vi) the Chapter 11 Case; (vii) the property to be distributed under the Plan; or (viii) any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or the Chapter 11 Case, against each of (a) the Debtor's Professionals; (b) the Committee's Professionals; (c) each member of the Committee in its capacity as such; (d) the Estate; and (e) the Creditor Trustee.**

3.    **Release of Liens**

**Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document assumed, entered into, or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to Article III of the Plan, all mortgages, deeds of trust, liens, or other security interests against any property shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, liens, or other security interests, including any rights in and to any collateral thereunder, shall revert to the Creditor Trustee.**

### ARTICLE X.
### MISCELLANEOUS

A.    **Payment of Statutory Fees**

All fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Creditor Trustee to the extent required by applicable law.

B.    **Section 1146 Exemption**

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under this Plan, may not be taxed under any law imposing a stamp tax or similar tax.

### C.    Business Day

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### D.    Dissolution of Committee

On the Effective Date, the Committee will be dissolved, and the members thereof and the professionals retained by the Committee in accordance with section 1103 of the Bankruptcy Code (including without limitation, attorneys, financial advisors, and other professionals) will be released and discharged from their fiduciary duties and responsibilities, except for purposes of (i) prosecuting or participating in any appeal of the Confirmation Order or any request for reconsideration thereof, and (ii) enforcing compliance with this Plan and the Confirmation Order by the Creditor Trustee, but only to the extent that there is a default under the Plan.

### E.    Severability

The provisions of this Plan shall not be severable unless such severance is agreed to by the Committee and such severance would constitute a permissible modification of the Plan pursuant to section 1127 of the Bankruptcy Code.

### F.    Conflicts

To the extent that any provision of the Disclosure Statement, or any exhibits or schedules thereto, conflict with or are in any way inconsistent with the terms of the Plan, the Plan shall govern and control.

### G.    Further Assurances

The Debtor, the Creditor Trustee, all Holders of Claims receiving Distributions under the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver agreements or documents and take other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### H.    Notices

All notices, requests, and demands required by the Plan or otherwise, to be effective, shall be in writing, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered to all the following, or to such other addresses as Filed with the Bankruptcy Court:

| To the Debtor: | With a copy to Counsel for the Creditors' Committee: |
|---|---|
| **Millerbernd Systems, Inc..** | **BASSFORD REMELE, P.A.** |
| c/o Ronald Leaf, | c/o Jeffrey D. Klobucar, Esq. |

27

not individually,
but solely as Creditor Trustee
Platinum Management, LLC
12301 Whitewater Drive, Suite 10
Minnetonka, MN  55343

Patrick D. Newman, Esq.
100 South Fifth Street, Suite 1500
Minneapolis, MN 55402

**Goldstein & McClintock LLLP**
c/o Matthew E. McClintock, Esq.
Brian J. Jackiw, Esq.
Amrit S. Kapai, Esq.
208 South LaSalle, Suite 1750
Chicago, Illinois 60604

## I.     Filing of Additional Documents

On or before the Effective Date, the Committee may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## J.     Successors and Assigns

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

## K.     Closing of Case

The Chapter 11 Case shall remain open until such time as the Creditor Trustee (or one of them, as applicable) has requested a Final Decree and complied with all relevant statutory provisions of required for entry of a Final Decree.

## L.     Governing Law

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal laws apply, the rights and obligations under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of Minnesota, without giving effect to the principles of conflicts of laws.

## M.     Section Headings

The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

## N.     Further Information

Requests for further information regarding the Plan should be directed to the Committee's counsel listed above.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction after the Effective Date over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Case or the Plan, or that relates to the following, in each case to the greatest extent permitted by applicable law:

1.      to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan;

2.      to determine any and all motions, adversary proceedings, applications, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Creditor Trustee after the Effective Date; provided, however, that the Creditor Trustee shall reserve the right to commence collection actions, actions to recover receivables, and other similar actions in all appropriate jurisdictions;

3.      to hear and determine any timely objections to Administrative Expense Claims and Priority Claims or to proofs of Claim and Equity Interests filed, both before and after the Confirmation Date, including any objections to the classification of any Claim or Equity Interest, and to allow, disallow, determine, liquidate, classify, estimate, or establish the priority of or secured or unsecured status of any Claim, in whole or in part;

4.      to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

5.      to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code, including, without limitation, to enter an order or orders in addition to the Confirmation Order confirming and approving any sale or sales consummated in connection with the Plan, should a buyer require the same, and making clear that any such sale is being made free and clear or liens, claims, and encumbrances as provided for in the Confirmation Order;

6.      to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

7.      to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses;

8.      to hear and determine disputes arising in connection with or relating to the Plan or the interpretation, implementation, or enforcement of the Plan, or the extent of any Entity's obligations incurred in connection with or released or exculpated under the Plan;

29

9.      to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

10.      to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement to be executed in connection with the Plan;

11.      to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

12.      to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code;

13.      to hear any motion to extend the time within which the Creditor Trust must make distributions after the Effective Date; and

14.      to enter a Final Order closing the Chapter 11 Case.

## ARTICLE XII.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.      Modification of Plan

The Committee reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan at any time prior to the entry of the Confirmation Order.  Upon entry of the Confirmation Order, the Committee may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such Holder and the votes of each Class for or against the Plan shall be counted and used in connection with the modified plan of liquidation.  The Committee reserves the right to amend any exhibits or schedules to this Plan, whereupon each such amended exhibit or schedule shall be deemed substituted for the original of such exhibit.  The Committee shall provide notice of any amendments to any exhibit or schedule to the parties affected thereby.

After the Confirmation Date, the Committee may, under Section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies within or among this Plan, the Disclosure Statement, and the Confirmation Order, and to accomplish such matters as may be reasonably necessary to carry out the purposes and intent hereof.  A Holder of a Claim or Equity Interest that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended, or modified, if the proposed alteration, amendment, modification, or remedy does not materially and adversely affect the treatment of the Claim or Equity Interest of such Holder hereunder.

**B.      Revocation, Withdrawal, or Non-Consummation**

The Committee reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of liquidation. If the Committee revokes or withdraws the Plan, or if the Confirmation Order confirming the Plan shall not be entered or become a Final Order, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (1) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or the Debtor's Estate, (2) prejudice in any manner the rights of the Debtor or its Estate, (3) constitute an admission of any sort by the Committee, or (4) constitute a release of any Causes of Action possessed or maintained by the Estate.

Dated: July 1, 2019                          Respectfully submitted,

**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF
MILLERBERND SYSTEMS, INC.**

**Mark Dulaney, Committee Chairperson**

By: _____
     Mark Dulaney

By: */e/ Jeffrey D. Klobucar*
     Jeffrey D. Klobucar (#0389368)
     Patrick D. Newman (#395864)
     **BASSFORD REMELE, P.A.**
     100 South Fifth Street, Suite 1500
     Minneapolis, MN 55402
     jklobucar@bassford.com
     pnewman@bassford.com
     Telephone: (612) 333-3000
     Facsimile: (612) 333-8829

     and

     Matthew E. McClintock, Esq. (*pro hac vice*)
     Brian J. Jackiw (*pro hac vice*)
     Amrit S. Kapai, Esq. (*pro hac vice*)
     **GOLDSTEIN & MCCLINTOCK LLLP**
     208 South LaSalle, Suite 1750

31

Chicago, Illinois 60604
mattm@goldmcclaw.com
brianj@goldmcclaw.com
amritk@goldmcclaw.com
Telephone:  312-337-7700
Facsimile:  312-277-2305

***Counsel for the Official Committee
of Unsecured Creditors***